Slip Op. 23-7

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **NLMK PENNSYLVANIA, LLC,** | |
| **Plaintiff,** | **Before: Claire R. Kelly, Judge** |
| **v.** | **Court No. 21-00507** |
| **UNITED STATES,** | |
| **Defendant.** | |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's determinations with respect to Plaintiff NLMK Pennsylvania, LLC's 2020–2021 Section 232 exclusion requests.]

Dated: January 23, 2023

<u>Sanford Litvack</u>, Chaffetz Lindsey LLP, of New York, NY, argued for plaintiff. With him on the brief were <u>Andrew L. Poplinger</u> and <u>R. Matthew Burke</u>.

<u>Meen Geu Oh</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant. Also on the brief were <u>Kyle S. Beckrich</u>, Trial Attorney, <u>Tara K. Hogan</u>, Assistant Director, <u>Brian Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M. McCarthy</u>, Director.

Kelly, Judge: Before the court is Plaintiff NLMK Pennsylvania, LLC's ("NLMK") motion for judgment on the agency record. <u>See</u> Pl.'s Mot. J. Agency Rec., July 22, 2022, ECF No. 76. The motion challenges the U.S. Department of Commerce's ("Commerce") denial of NLMK's requests for certain steel slabs to be excluded from tariffs imposed pursuant to Section 232 of the Trade Expansion Act of 1962, as amended, Pub. L. 87-794, § 232, 76 Stat. 872, 877 (1962) ("Section 232"),

codified at 19 U.S.C. § 1862 (2018).  Id.  For the reasons that follow, Commerce's

determinations are remanded for further explanation or reconsideration.

## BACKGROUND

NLMK produces coil steel by heating and rolling semi-finished steel slab in a

conversion mill.  See Request for Exclusion from Remedies: Section 232 National

Security Investigation of Steel Imports ("Exclusion Request"), AR 111695-017, June

16, 2022, ECF No. 64-1.[1]  The vast majority of coil sold by NLMK is rolled from

250mm slab, which produces large coils.  Id.  A smaller percentage of NLMK's coil is

produced from 200mm slab, which produces smaller coils.  Id. at AR 111695-018.

NLMK imports both 250mm and 200mm slab from the Russian Federation.  Id. at

AR 111695-012.

In March 2018, acting pursuant to Section 232 of the Trade Expansion Act of

1962, the President issued Proclamation 9705, which imposed a 25% tariff on steel

imports.[2]  Proclamation 9705 of March 8, 2018, 83 Fed. Reg. 11,625, 11,627 (March

---

[1] Commerce assigns each exclusion request and associated documents an individual
request number followed by a  page number—for example, AR 111695-001.  The court
identifies each exclusion request, including decision memoranda and all underlying
documentation that appears in the administrative record pertaining to the cited
request by the request numbers assigned by Commerce.  All exclusion request
citations are to the confidential administrative record unless otherwise noted.
[2] Pursuant to 19 U.S.C. § 1862, the President may impose tariffs on imports of an
article upon a finding by the Secretary of Commerce that such imports threaten to
impair national security.  19 U.S.C. § 1862.

15, 2018) (Adjusting Imports of Steel into the United States) ("Proclamation 9705").[3]
The President also instructed Commerce to consider affected parties' requests for
exclusions from the Section 232 tariffs.  <u>Id.</u> at Cl. 3.  Commerce subsequently
published rules for requesting Section 232 exclusions, which are codified in 15 C.F.R.
§ 705, Supp. 1(c)–(d) (2020).  The regulations specify "[a]n exclusion will only be
granted if an article is not produced in the United States in a sufficient, reasonably
available amount, and of a satisfactory quality, or for specific national security
considerations."  <u>Id.</u> at Supp. 1(c)(5)(i).

Between July 2020 and November 2021, NLMK submitted 58 exclusion
requests for steel slab, all of which were rejected.  Second Am. Compl., ¶¶ 11–17,
April 27, 2022, ECF No. 51 ("Compl.")  In total, 56 of the requests were for 250mm
slab, and 2 requests were for 200mm slab.[4]  <u>Id.</u>  Domestic steel producers United
States Steel Corporation ("U.S. Steel"), AK Steel Corporation (now Cleveland-Cliffs,
Inc.) ("Cleveland-Cliffs") and Nucor Corporation ("Nucor") (collectively, "Objectors")
objected to all of the exclusion requests, and Commerce subsequently denied all of the
requests.  <u>Id.</u> ¶¶ 11–15.  Commerce denied 55 of the requests on the basis that

---

[3]  The President issued Proclamation 9705 in accordance with 19 U.S.C.
§ 1862(c)(1)(A), and directed Commerce to impose an additional 25% tariff on steel
imports.  <u>Proclamation 9705</u>, 83 Fed. Reg. at 11,627. The proclamation contained
instructions for Commerce to develop procedures for requesting exclusions.  <u>Id.</u> at Cl.
3.

[4]  In July 2020, NLMK made 26 requests for 250mm slab; in March & April 2021,
NLMK made 26 requests for 250mm slab and 2 requests for 200mm slab; in
September 2021, NLMK made 2 more requests for 250mm slab; in November 2021,
NLMK made 2 more requests for 250mm slab.  Compl. ¶¶ 11–13.

Objectors could supply slab which was either identical or a suitable substitute.  Id.

¶¶ 11–13.  It denied the remaining 3 requests on the basis that the requests were

"ambiguously defined."  Id. ¶¶ 14–16.[5]  Commerce requested a remand for several

July 2020 denials, which the court granted in NLMK Pennsylvania LLC v. United

States, 558 F. Supp. 3d 1401 (Ct. Int'l Tr. 2022).  Commerce denied these requests

again on remand.  See, e.g., Exclusion Request AR 111695.  NLMK challenges

Commerce's denials of its exclusion requests as arbitrary, capricious, and not in

accordance with law under the Administrative Procedure Act, 5 U.S.C. § 706, and

moves the court for judgment on the agency record.  See Compl. ¶ 145; see also Pl.'s

Mot. J. Agency Rec., July 22, 2022, ECF No. 76 and accompanying Memo. L. Suppt.

Mot. J. Agency Rec., July 22, 2022, ECF No. 77 ("Pl.'s Br.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(i) (2018).  The court reviews

an action brought under 28 U.S.C. § 1581(i) under the same standards as provided

under section 706 of the Administrative Procedure Act ("APA"), as amended.  See 28

U.S.C. § 2640(e). Under the statute, the reviewing court shall:

> (2) hold unlawful and set aside agency action, findings and conclusions
> found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in
> accordance with law . . .

---

[5] Defendant asks that the court remand these three ambiguous requests for
reconsideration in light of NLMK's submissions.  See Def.'s Corr. Resp. Pl.'s Mot., 33–
35, Sept. 26, 2022, ECF No. 83.

> (F) unsupported by substantial evidence in a case subject to sections 556
> and 557 of this title or otherwise reviewed on the record of an agency
> hearing provided by statute.

5 U.S.C. § 706(2)(A), (F).

Under the arbitrary and capricious standard, courts consider whether the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Alabama Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

## DISCUSSION

NLMK argues that Commerce's denials of its exclusion requests were arbitrary and capricious under 5 U.S.C. § 706, because the denials "are devoid of any analysis or reasoning." Pl.'s Br. at 44–45. Specifically, NLMK claims that Commerce does not explain why Objectors' smaller offerings were suitable substitutes for 250mm slab, and whether Objectors could produce sufficient quantities of slab to meet NLMK's needs. Id. at 13–45. Defendant counters that Commerce reasonably explains the basis for its denials: that Objectors could timely produce substitute slab in sufficient quantity and quality. Def.'s Corr. Resp. Pl.'s Mot., 13–33, Sept. 26, 2022, ECF No. 83 ("Def.'s Br."). NLMK also asks the court to refund the $255 million it has paid in Section 232 tariffs, Pl.'s Br. at 3, while Defendant argues that, assuming NLMK

arguments are successful, the appropriate remedy would be a remand.  Def.'s Br. at

40.  For the following reasons, the court remands Commerce's determinations,

because Commerce acted arbitrarily and capriciously when it denied NLMK's

requests without sufficient explanation in light of record evidence.

## I.     Suitable Substitute

For all of NLMK's July 2020 requests, Commerce concludes that Objectors

could produce steel slab which was a suitable substitute for the 250mm slab NLMK

requested.[6]  NLMK argues that the thinner slabs offered by Objectors were not

suitable substitutes within the meaning of the regulations, and that Commerce fails

to explain the basis of its determinations or address contradictory evidence.  Pl.'s Br.

at 13–27.  Defendant argues Commerce reasonably concludes that Objectors' slab

offerings were suitable substitutes, because the coil produced by Objectors' slabs

would be substantially the same, and NLMK simply disagrees with how Commerce

weighed the evidence.  Def.'s Br. at 15–26, 31–33.  For the reasons that follow,

Commerce's determination that Objectors offered a suitable substitute fails to

address record evidence which undermines its conclusion, and is remanded for

further explanation or reconsideration.

Commerce's Section 232 regulations specify that "[a]n exclusion will only be

granted if an article is not produced in the United States in a sufficient, reasonably

---

[6] Exclusion Requests AR 111695, 697, 698, 701, 709, 713, 718, 725, 729, 731, 734, 740, 745, 748, 752, 758, 762, 767, 771, 773, 775, 776, 779, 780, 781, 782, June 16, 2022, ECF Nos. 64-1–66-6.

available amount, and of a satisfactory quality, or for specific national security considerations." 15 C.F.R. § 705, Supp. 1(c)(5)(i). "Not produced in the United States in a satisfactory quality" means that an article needs to be "equivalent as a substitute product," although it need not be "identical." Id. at Supp. 1(c)(6)(ii). A "substitute product" must meet "the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards" necessary for that end user." Id. Thus, whether a substitute is suitable depends on the needs of the end user. The "end user" is the party seeking the exclusion. The terminology and examples in the regulations refer to the needs and requirements of the requestor's "business activity"—not the demands of the requestor's clients.

Commerce reviews an end user's exclusion request based on the information included in the request, as well as any objections to the request. Id. at Supp. 1(c)(6)(i). Domestic steel manufacturers may object to exclusion requests on the grounds that they can provide a suitable substitute meeting the end user's quality requirements. Id. at Supp. 1(d)(1). The fillable objection form requires that an objector: (1) indicate whether the objector currently manufactures or can immediately manufacture the product, (2) state time period within which the objector can produce the product, (3) state whether the objector manufactures, or can immediately manufacture, a substitute product, (4) discuss the suitability of the objector's product, (5) provide a technical description of the product's characteristics, (6) state what percentage of the requested tonnage the objector can manufacture, and (7) detail the total delivery

time.  See, e.g., Exclusion Request AR 111695-032–039   When an objector opposes

an exclusion request and demonstrates that it can produce a product with "similar

form, fit, function, and performance" to the requested product, Commerce will deny a

request for exclusion.   Submissions of Exclusion Requests and Objections to

Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,036 (Sept. 11,

2018) (Commerce response to Cmt. (f)(5)(iv)).

        When assessing exclusion requests Commerce must compare the quality of the

substitute product with that of the requested product.  Although the regulations lack

specific metrics to compare quality, they provide several examples of what might be

considered a "quality" standard under the regulations.  Steel plate would not be a

suitable substitute if it failed to conform to military testing specifications for combat

vehicles.  15 C.F.R. § 705, Supp. 1(c)(6)(ii)(A).  Likewise, steel tubing for use in

medical devices would not be a substitute if it failed to gain Food and Drug

Administration approval. Id. Similarly, a can used for fruit juice would need tin plate

approval from the U.S. Department of Agriculture to be considered a suitable

substitute. Id.

        Here, Commerce denies NLMK's July 2020 requests in three groups, for

similar reasons, finding that Cleveland-Cliffs and U.S. Steel could produce suitable

substitutes for the 250mm slab requested by NLMK.  See, e.g., Exclusion Requests

AR 11679, 734, 695, June 16, 2022, ECF Nos. 69-5–7.[7]  Objectors responded to all 26

exclusion requests stating that they could not produce an identical product, but that

they could produce a suitable substitute.  See, e.g., Exclusion Request AR 111697-003

(Objectors replying "no" to fields 1.c and 1.d, but "yes" to 1.e or 1.f).  For the first

group of requests, Commerce concludes that offerings by U.S. Steel and Cleveland-

Cliffs "meet the quality criterion because they can manufacture an identical product

matching the chemical, mechanical, and technical specifications provided in the

exclusion request."  Id.[8]  Commerce offers a longer explanation in the second group

of requests, relying on subject matter expert ("SME") analysis, to which U.S. Steel

and Cleveland-Cliffs responded that they could produce a suitable substitute, but not

an identical product.  See Exclusion Request AR 111734-003.  Commerce reasoned

that:

> Per the SME analysis, the [Cleveland-Cliffs] and U.S. Steel objection
> offerings are for slabs that are thinner than the request. Given the
> reported constraints of the furnace and other facilities at the requestor's
> manufacturing site, the slabs from these objectors would produce
> smaller coils than the requestor states their customers "generally" want;
> however, the SME found that parts made from sheet coil utilize a portion
> of the coil for each part, so the result of a smaller coil is that the end-
> user would need to swap out the coils more frequently and it could result

---

[7] These three requests are the lowest numerical examples of the three distinct
versions of Commerce's reasoning.  Exclusion Request AR 11679 represents 10
requests, AR 11734 represents 1 request, and AR 11695 (modified following court
remand per NLMK Pennsylvania, LLC v. United States, 558 F. Supp. 3d 1401 (Ct.
Int'l Trade 2022)) represents 15 requests.  The court considers the reasoning
expressed in these representative requests as applicable to the corresponding group.
[8] Commerce also concludes that Nucor's offerings were not a substitute, because the
offerings were for coil—not slab.  See, e.g., Exclusion Requests AR 11697, AR 11734,
AR 11695, AR 260914.

in more by-cuts and scrap.  The SME found, however, that these are
issues of efficiency and economic factors.  These factors are outside of
ITA's analysis.  In addition, the SME found that the smaller slabs can
make coils, albeit shorter ones, that can make the end products.  Based
on technical factors, the SME found the [Cleveland-Cliffs] and U.S. Steel
objection offerings to be suitable substitutes.

Exclusion Request AR 11734-004.  In the third group of requests, Commerce again
finds that Cleveland-Cliffs' and U.S. Steel's offerings were suitable substitutes.
Exclusion Request AR 111695-119.  Specifically, Commerce states Cleveland-Cliffs
could produce 230mm slab, and U.S. Steel could produce 202.2, 222.25, 231.84,
243.84, and 304.8mm slab.  Id.  Commerce reasons that, because its SME found that
it was "technologically impossible to mass produce semi-finished slab with a
thickness tolerance of less than one millimeter," it would be unrealistic to hold
Objectors to exactly match NLMK's request for 250mm slab.  Id.  Relying on the
SME's analysis, Commerce explained that:

> the thinner slabs offered by AK Steel and U.S. Steel would produce a
> slightly smaller coil, but that smaller coil can be used to produce the
> same end products as a larger coil. . . . . NLMK does not state its end use
> products require coil of a certain length but rather identifies generic end
> use products which can be produced from a portion of the coil length.

Exclusion Request AR 111695-119.  The common element in Commerce's
explanations is that it considers smaller coils to be essentially the same as larger coils
for the purposes of producing steel coil products.  Compare id. with Exclusion Request
AR 111734-004.  Thus, Commerce reasons that from the coil user's perspective, it
may be possible to use different coil sizes interchangeably, because the steel itself is
compositionally identical.

Court No. 21-00507                                                    Page 11

For each group of denials Commerce conflates the needs of NLMK, as the end user, with those of NLMK's customers.  This mistake alone warrants a remand because the regulations make clear, and Defendant concedes, that the requestor is the end user and Commerce must assess the substitute with reference to the quality needs of the end user.  See 15 C.F.R. § 705, Supp. 1(c)(6)(i)–(ii); Oral Argument, 19:20–19:40, Nov. 18, 2022, ECF No. 96.  Whether NLMK's customers could make their products with products made by NLMK using substitute coil is immaterial. NLMK rolls coil, and thus its "business activity" for the purposes of the regulations is selling coil.  See 15 C.F.R. § Pt. 705, Supp. 1(c)(6)(i).  Assuming for the sake of argument that NLMK's customers would view extra by-cuts and scrap as economic or efficiency factors, Commerce's analysis confuses NLMK's end use with its customers' end use, and what may be an efficiency factor for a customer may translate as a requirement for a seller.[9]  NLMK asserts that its customers will not buy smaller coils, see, e.g., Exclusion Request AR 111695-018, and Commerce's explanations do not engage with this essential issue.  Thus, the court remands Commerce's determinations so that it can assess whether the end user, NLMK, will be able to make coil using a substitute product.

Commerce's reasoning for the first group of denials does not engage with the issue of suitability.  It simply states that U.S. Steel and Cleveland-Cliffs "can

---

[9] Without support, Defendant argues that NLMK contrived a quality-based exclusion. Def.'s Br. at 23.  Commerce does not make this assertion, and the court need not and does not address it.

manufacture an identical product," despite both companies' indications that they cannot manufacture an identical product by answering "no" in fields 1.c and 1.d. Exclusion Request AR 111697-003.  To the extent that Commerce means "suitable substitute" instead of "identical product," this single-sentence analysis would still be conclusory, as it only states that Objector's offerings are acceptable, without addressing any of the issues raised in NLMK's Requests, Rebuttals, or Sur-Rebuttals.

Moreover, Commerce does not reach its own conclusion, but adopts the opinion of an unidentified SME.  Id. at AR 111697-004 ("The SME also concluded that the [Cleveland-Cliffs] and U.S. Steel objection offerings are suitable substitutes").  At oral argument Defendant, in response to the court's question, indicated  that SMEs are non-lawyer agency contractors who provide technical advice to Commerce's recommenders, but do not interpret Commerce's regulations.  Oral Argument, 2:50– 5:00, Nov. 18, 2022, ECF No. 96.  Although neither the court nor NLMK are privy to the identity, functioning, or methodology of these SMEs, it would appear that these individuals offer their opinion as to the ultimate question of suitability.  See, e.g., Exclusion Request AR 111697-004 ("the SME also concluded that the . . . offerings are suitable substitutes").  The court is unaware of whether the SME provided a report to Commerce, or simply the conclusion it reached.  Either way, it would appear that the SME is offering an opinion as evidence.  Without the underlying report, if such a report exists, the court has no basis by which to assess the foundation or reasonableness of that opinion. NLMK has had no opportunity to question or rebut

the foundation or reasonableness of the SMEs' conclusions.   Defendant claims that
the SMEs are qualified experts; however at this point the SMEs' qualifications,
assumptions, and for the most part, rationales, are secret.   Commerce cannot contract
around its broader obligation to explain the basis for its determinations, nor can it
rely upon conclusory statements of unidentified experts.   See Bowman Transp., Inc.
v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (basis for agency's decisions
must be reasonably discernable).   Therefore, the court cannot identify a "rational
connection between the facts found and the choice made" when it is unclear what
factors the SME weighed, and who made the decision that Objectors' offerings were
suitable.   See Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962).

In the second group of denials, Commerce recognizes that coils made from
Objectors' slabs would be smaller than what NLMK's customers would "generally
want."  Exclusion Request AR 111734-004.   Commerce again relies on the opinion of
an SME, who determined the "end user" would need to swap out coils more frequently,
which could result in more "by-cuts and scrap."   Id.  The SME also states that the
smaller coils "can make the end products."   Id.  Finally, the SME concludes that these
problems are "issues of efficiency and economic factors," which are "outside of ITA's
analysis."  Id.  As discussed, this explanation assumes that the end user is not NLMK,
but NLMK's customer. Because NLMK is the end user, see 15 C.F.R. § 705, Supp.
1(c)(6)(i)–(ii), Commerce's explanation that NLMK's customers can simply swap out

coils more frequently runs counter to the evidence on the record.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

Again, it is unclear whether the SME is only opining on technical subjects, or drawing conclusions for the agency.  In either case, the record does not reveal the SME's methodology, and thus the basis for Commerce's determination is not reasonably discernable.  See Bowman, 419 U.S. at 286.  Finally, as discussed above, the court is unable to credit the conclusions of an unidentified expert, especially in the absence of an opportunity for NLMK to rebut the evidence offered by that SME.

Commerce's third group of denials repeats the previous reasoning that the "end use products" made from NLMK's coil are generic and can be produced with a coil of any length.  See, e.g., Exclusion Request AR 111695-119.  It also adds that NLMK's requirement of exactly 250mm slab is unrealistic according to the SME.[10]  Id.  Unlike in previous denials, here the SME is only credited with technical conclusions, such as concluding that Objectors' offerings would produce a compositionally identical but smaller coil.  See id.  However, as previously discussed, because NLMK is the end user, the question is not whether NLMK's customers could use smaller coils, but whether NLMK will still be able to sell coil using smaller slab.  Again, the court is

---

[10] The SME's observation that it is "technologically impossible" to produce slab with a tolerance of less than 1mm requires further explanation. Assuming the SME's statement refers to the tolerance for error, it is unclear why in the same paragraph Commerce seems to credit Objectors' claims that they can produce 222.25mm, 231.84mm, and 243.84mm slabs—suggesting a 1/100th mm tolerance is possible. Exclusion Request AR 111695-119.

unable to credit the SME's conclusions.  Even if these conclusions are only technical,

there is still no foundation for the SME's qualifications and methodology, and NLMK

has had no opportunity to rebut the SME's evidence.

Defendant attempts to expand on Commerce's explanations, arguing that the

"quality criterion" (i.e. whether a product is a suitable substitute) focuses on the

"technical and compositional qualities of the material itself."  Def.'s Br. at 18.

Defendant argues that "industry specs," "internal company quality controls or

standards," and "regulatory, or testing standards" would meet this standard, but

"non-quality-based preferences" such as packaging would not.  Id. at 19.  Defendant

points to Commerce's response to a comment, in which it stated that "form, fit,

function, and performance" were relevant factors in determining a product's

suitability.  Id.; 83 Fed. Reg. at 46,036 (Commerce response to Cmt. (f)(5)(iv)).

Defendant's argument cannot cure deficiencies in Commerce's explanation.

Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1380 (Fed. Cir. 2009) (attorney

argument is not evidence); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (courts

review agency action solely on the grounds invoked by the agency).  To the extent

that Defendant's argument elaborates on Commerce's reasoning, it is still not clear

why the size of a product is not "quality-based" and does not fall under "form, fit, or

function" within the meaning of the regulations.  It is unclear why the terms "form"

and "fit" are limited to compositional qualities, when the ordinary use of those terms

seems to encompass size as well.[11]   See Pl.'s Reply Memo. L. Suppt. Mot. J. Agency

Rec., 5–7, Oct. 10, 2022, ECF No. 85 ("Pl.'s Reply").   Moreover, as NLMK points out

in its reply, "dimensional specifications" is an option listed on Commerce's standard

rebuttal form as a basis for opposing an objector's assertions of quality.   Id. at 6.

Listing "dimensional specifications" under "quality" suggests Commerce considers

size to be a relevant factor in its suitable substitute analysis.   Therefore, for the above

reasons, Commerce must further explain why it considers Objectors' slab a substitute

product.

## II.   Reasonably Available

Commerce determined that Objectors could provide a sufficient quantity of

both 250mm and 200mm slab to meet all of NLMK's requests.[12]   NLMK argues that

Commerce ignored evidence on the record that Objectors could not, in fact, supply the

requested quantities of slab due to idled production facilities and preexisting sales

commitments.[13]   Pl.'s Br. at 28–30, 35–38, 40–44; Pl.'s Reply at 9–19.   Defendant

---

[11]   Form, Merriam-Webster's Dictionary, available at https://www.merriam-webster.com/dictionary/form (last accessed Jan. 18, 2023) (defining "form" as "the shape and structure of something as distinguished from its material"); Fit, Merriam-Webster's Dictionary, available at https://www.merriam-webster.com/dictionary/fit (last accessed Jan. 18, 2023) (defining "fit" as "to conform to a particular shape or size").

[12]   Commerce made this finding in all of its 2020 and 2021 denial letters, with the exception of the three requests which it deemed ambiguous (Exclusion Requests AR 248733, AR 248740 and AR 260912).

[13]   NLMK also argues, in a footnote, that U.S. Steel has provided no timeline as to

(footnote continued)

counters that Commerce may rely on Objectors' certified statements, citing <u>Allied</u> <u>Tech Grp., Inc. v. United States</u>, 649 F.3d 1320, 1330 (Fed. Cir. 2011).  Def.'s Br. at 23–33, and argues that the record contains ample evidence supporting a finding that Objectors can provide NLMK with slab.  <u>Id.</u>  For the reasons that follow, Commerce's determination that Objectors could provide NLMK with sufficient quantities of slab is remanded for further explanation or reconsideration.

As previously explained  "[a]n exclusion will only be granted if an article is not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory quality, or for specific national security considerations." 15 C.F.R. § 705 at Supp. 1(c)(5)(i).  Commerce must also consider whether a suitable substitute is available immediately.  <u>Id.</u> at Supp. 1(c)(6)(i).  "Available 'immediately' means that a product . . . can be delivered by a U.S. producer 'within eight weeks', or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier."  <u>Id.</u>

Commerce denies all of NLMK's requests, finding that one or more Objectors can produce 100% of the slab quantity requested.  <u>See</u> Exclusion Request AR 111695 et seq.  For NLMK's 2020 requests, Commerce finds that Cleveland-Cliffs and U.S. Steel can supply the entire quantity requested.  <u>See, e.g.</u>, Exclusion Request AR

---

when it can restart its idled Great Lakes Works facility, which U.S. Steel claims can produce suitable slab.  Pl.'s Br. at 24 n.68.  It indicates that objectors are required by regulation to provide a timeline for bringing idled capacity online.  <u>Id.</u> (citing 15 C.F.R. § 705, Supp. 1(d)(4)).

Court No. 21-00507                                                                    Page 18

111697-004.  For NLMK's March-April 2021 requests for 250mm slab, Commerce

finds that only Cleveland-Cliffs could supply the entire quantity.  See, e.g., Exclusion

Request AR 194445-004.  For NLMK's two 2021 requests for 200mm slab, Commerce

finds that only U.S. Steel could supply the entire quantity.  See Exclusion Requests

AR 198055-004 and AR 198056-004.  For NLMK's lone November 2021 request,

Commerce finds that only Cleveland-Cliffs could supply the quantity.  See Exclusion

Request AR 260914-004.

        The reasoning in all Commerce's denials is identical, as are the filled-out fields

in the denial letters.  See Exclusion Request AR 111695 et seq.  The field marked

"3.a"[14] in each instance is filled with "100%" with respect to either U.S. Steel,

Cleveland-Cliffs, or both.[15]  Id.  Below field 3.a there is a second field, which reads:

"Does anything in the request, rebuttal, or surrebuttal, including attachments,

provide evidence to contradict the objector's claims?"  Id.  These fields are all filled

out "No."  Id.  The text of Commerce's explanation is substantially the same in all

cases, and reads: "[Objector/s] can produce 100 percent of the requested volume.  As

such, [Objector/s] meet the quantity criterion."  Id.  Commerce does not offer any

further explanation.

---

[14] The field definition for box 3.a on the objection form states: "What percentage of
the total product tonnage requirement covered under the Exclusion Request that is
the subject of this Objection Filing can your organization manufacture at its U.S.
plants on a timely basis?"  Exclusion Request AR 111695-122.

[15] Nucor variously indicates that it can supply 60% or 100% of the quantity requested
in field 3.a, but Commerce consistently finds that Nucor cannot meet the requested
quantity, as Nucor does not sell slab.  See, e.g., Exclusion Request AR 111695.

Commerce provides no reasoning in its denials, and does not engage with evidence which runs contrary to its decision. For example, with respect to Exclusion Request AR 194445, NLMK submitted comments asserting that both of Cleveland-Cliffs' facilities capable of producing 250mm slab had not, in fact, sold any such slab on the market over the last ten years. Exclusion Request AR 194445-059. NLMK pointed out that Cleveland-Cliffs does not publicly advertise 250mm slab for sale. Id. It also stated that as a condition of purchasing the two facilities in question, Cleveland-Cliffs committed itself to supplying ArcelorMittal (a steel producer) with 1.5 million tons of slab per year, which would allegedly consume all of its available slab supply. Id. Defendant's argument that Cleveland-Cliffs adequately addressed these concerns is a post hoc rationalization, as Commerce does not reference Cleveland-Cliffs' statements in its explanation.[16] Thus, it is not reasonably discernable that Commerce considered or adopted the explanation given by Defendant. See Bowman Transp., 419 U.S. at 286 (agency action will be sustained if grounds are "reasonably discernable"); see also Chenery Corp., 332 U.S. at 196.

It is unclear whether Commerce considered NLMK's contrary evidence, as required by the statute, or what weight it accorded Cleveland-Cliffs' replies. See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. Commerce must address evidence that

---

[16] Cleveland-Cliffs stated in its sur-rebuttal that its slab products were not advertised publicly because of the "limited market population" for such sales, and that it could "adjust product mix accordingly" to meet NLMK's needs. Exclusion Request AR 194445-67–68.

runs contrary to its decision.  See id.; Allied Tech Grp., 649 F.3d at 1330–31 (agency entitled to rely on certifications "where there is no significant countervailing evidence reasonably known to the agency evaluators that should create doubt . . . ."). Therefore, for the above reasons, Commerce must further explain why it considers Objectors' slab to be "reasonably available" in sufficient quantities in light of any evidence on the record to the contrary.

## III.  Remedy

NLMK requests the court order a refund of over $255 million in tariffs.  Pl.'s Br. at 3, 47.  NLMK argues Commerce did not change its approach following the first remand and predicts Commerce will deny its exclusion requests again upon a second remand.  Id.  NLMK's request for a refund is denied.

Where record evidence is insufficient, the court may order further administrative or adjudicative procedures necessary to reach the correct decision.  28 U.S.C. § 2643(b).  The court may order any form of appropriate relief, including a remand.  Id. § 2643(c)(1); Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). However, a "judicial judgment cannot be made to do service for an administrative judgment."  I.N.S. v. Orlando Ventura, 537 U.S. 12, 16 (2002) (citing SEC v. Chenery Corp., 318 U.S. 80, 88 (1943).  The agency brings expertise to bear, evaluates evidence, and makes initial determinations through informed analysis.  Id. at 16–17. Further, remand presents an opportunity for the agency to enlarge the record and to

make and explain new findings.  <u>Nippon Steel Corp. v. Int'l Trade Comm'n</u>, 345 F.3d

1379, 1380–82 (Fed. Cir. 2003).

The appropriate remedy in this case is a remand.   NMLK's argument that a

remand would be futile is without merit.  <u>See</u> <u>Nexteel Co., Ltd. v. United States</u>, 28

F.4th 1226, 1238 (Fed. Cir. 2022) (reversing the Court of International Trade's order

to Commerce to reverse its  particular market situation finding). There  has  been  a

single remand in this case which Commerce requested. <u>See</u> <u>NLMK Pennsylvania</u>, 558

F. Supp. 3d 1401.  There is no showing here that Commerce could reach only one

possible conclusion from the record on a second remand.  <u>See</u> <u>Nexteel</u>, 28 F.4th at

1238.  Therefore, the matter is remanded to Commerce for further explanation or

reconsideration.[17]

## CONCLUSION

For  the  foregoing  reasons,  Commerce's  denials  of  NLMK's  2020  and  2021

Section 232 exclusion requests are remanded.  In accordance with the foregoing, it is

**ORDERED**  that  Commerce's  denials  of  NLMK's  exclusion  requests,

specifically Exclusion Requests AR 111695, 111697, 111698, 111701, 111709, 111713,

---

[17] Defendant requests a remand for Commerce to reconsider its determinations with respect to Exclusion Requests AR 248733, AR 248740 and AR 260912).  Def.'s Br. at 33–35.   The  court  has  discretion  to  grant  such  a  request  when  Commerce  has substantial and legitimate concerns, and wishes to reconsider its previous position without  confessing  error.   <u>SKF USA Inc. v. United States</u>, 254 F.3d 1022, 1029 (Fed. Cir. 2001).   Here, Defendant's concerns are substantial, because Commerce may revise its position on the denial of three exclusion requests on ambiguity grounds, and legitimate, as there is no indication that the request is frivolous or in bad faith.

Court No. 21-00507                                                                 Page 22

111718, 111725, 111729, 111731, 111734, 111740, 111745, 111748, 111752, 111758,

111762, 111767, 111771, 111773, 111775, 111776, 111779, 111780, 111781, 111782

194445, 194449, 194452, 194455, 194458, 194460, 194463, 194482, 194511, 194515,

194516, 194518, 194521, 194525, 194529, 194532, 194535, 194536, 194547, 194553,

194560, 194562, 194566, 194571, 194573, 194883, 198055, 198056, 248733, 248740,

260912, and 260914 are remanded for further explanation or reconsideration; and it

is further

        **ORDERED** that Commerce shall file its remand redetermination with the

court within 90 days of this date; and it is further

        **ORDERED** that the parties shall have 30 days to file comments on the remand

redetermination; and it is further

        **ORDERED** that the parties shall have 30 days to file their replies to the

comments on the remand redetermination; and it is further

        **ORDERED** that the parties shall file the Joint Appendix within 14 days after

the filing of replies to the comments on the remand redetermination; and it is further

        **ORDERED** that Commerce shall file the administrative record within 14 days

of the date of filing its remand redetermination.

                                                        /s/ Claire R. Kelly
                                                        Claire R. Kelly, Judge

Dated:          January 23, 2023
                New York, New York